UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>The Reserve Club of Pawleys Island, LLC.,<br><br>                                              Debtor. | Case No. 09-09116-jw<br>Chapter 11<br><br>**MOTION BY THE UNSECURED CREDITORS COMMITTEE TO ALTER THIS COURT'S ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES** |

The Official Committee of the Unsecured Creditors, by and through undersigned counsel moves to alter this Court's Order Establishing Bidding and Other Procedures entered February 18, 2010, pursuant to rules 9023 and 9024 Fed. Rules Bankr. Proc. and rules 59 and 60 F.R.Civ.P. In support thereof, the Committee would demonstrate the following:

**I.      Procedural/Factual Background**

1.      On January 21, 2010, the Debtor filed a Ex Parte Motion for Order Establishing Bidding Procedures.

2.      On January 28, 2010, the United States Trustee's Office appointed the Committee in this case.

3.      On January 29, 2010, this Court scheduled a hearing on the Ex Parte Motion for Order Establishing Bidding Procedures.

4.      On February 10, 2010, this Court held a hearing on the Debtor's Motion.

5.      On February 18, 2010 this Court entered an Order Establishing Bidding and Other Procedures in Connection with the Sale of the Debtor's Assets and Granting Protections to the Proposed Buyers (the "Order").

6. The Order provided that a copy of the Order was to be served on "all creditors and parties in interest and any other entities that have shown an interest in purchasing the Assets." The Debtor represented that notice of the sale would be published in the March 1 issue of Golf Business Magazine.

7. The sale was not advertised in the Myrtle Beach area newpapers but in the State newspaper in Columbia. The March 1 issue of Golf Business Magazine was not printed or sent to subscribers until after the deadline to bid had passed.

8. On March 10 and 11, 2010, the Court held a hearing on the Debtor's Motion to Sell Assets.

9. Appearing at the hearing was Larry Young, who testified that he was willing and able to place a bid for $700,000. The terms of Mr. Young's proposed bid are outlined in the Declaration of Larry Young attached hereto as exhibit A.

10. The Committee also presented the declaration of Dung Lam, who was not among the recipients of the Order on Bidding Procedures. Mr. Lam's declaration states he did not timely receive financial information relating to the property and asking for more time to perform due diligence on the property.

11. The also presented the declaration of Hilda Allen, a golf course broker who was on the list to receive notice of the sale. In the declaration, Ms. Allen testified she did not receive a copy of the Order.

12. This court held that declarations of Mr. Lam and Ms. Allen were inadmissible in support of the Committee's objection to the Motion to Sell because the declarations were hearsay. The Committee resubmits those declarations in support of this motion, under the exception to the hearsay doctrine contained in Rule 804(a)(5) F.C.R.Pro., which provides an exception where the witness is not subject to civil process of this court.

13. The Committee also submits the declaration of Doug Wall, another potential bidder on the property who did not receive a copy of the court's Order on bidding procedures.

14. The Committee also incorporates by reference for this motion the testimony by the Debtor's witness, Ben Catanzero, at the hearing on the Motion to Sell.

**II.     Authority and Argument**

15. Rule 60 Fed.R.Civ.Pro. is applicable to bankruptcy court orders by virtue of Rule 9024 Fed.R.Bankr.Pro. Under Rule 60 the Court may relieve a party from a final order for mistake, inadvertence, surprise or excusable neglect. In this case, the failure to submit timely bids was due to surprise, inadvertence or excusable neglect.

16. Rule 59 Fed.R.Civ.Pro. is applicable to bankruptcy court judgments by virtue of Rule 9023 Fed.R.Bankr.Pro. Under Rule 59, the court may open a nonjury judgment to take additional testimony and amend findings of fact and conclusions of law or make new ones, if the motion is filed within 28 days after the judgment. The Court may alter or amend its own judgment within 28 days of the entry of the judgment, or may alter its judgment on motion of any party for reasons not stated in the motion.

17. The Court should amend the Order Establishing Bidding Procedures because (1) the Debtor misrepresented the value of the transaction in its Motion and that fact became apparent at the hearing on the Debtor's Motion to Sell, (2) the appearance of other bidders and potential bidders constitutes new evidence justifying an extension of the bidding procedures, (3) the notice of the opportunity to bid was not sufficient, and (4) the Debtor will not be harmed by the extension.

18. As argued in the hearing on the Motion to Sell, the Committee believes that the Debtor's attempt to sell its assets is the product of collusion. As evidence of this collusion, the Committee would direct the Court's attention to the inaccuracies in the Debtor's Addendum to the

Motion to Sell. The Debtors states that the consideration to be paid by McConnell is $522,705. This figure is neither supported by the Asset Purchase Agreement nor the Debtor's hearing testimony.

19. If the Asset Purchase Agreement is interpreted by its written terms, the actual value of the offer is approximately $21,000. The Asset Purchase Agreement section 2.2 provides that McConnell will assume (1) the Debtor to Plantation Federal up to $150,000, (2) certain leases, and (3) accounts payable. The Debtor testified that (1) the loans to Plantation Federal would total $135,000 upon projected closing, and (2) the leases would cost $127,000 to assume. The Asset Purchase Agreement sets forth the accounts payable to be assumed and states their value is $28,011. Thus, the actual value to be paid under the Asset Purchase Agreement is about $290,000.

20. That amount to be paid must be reduced by the amount of cash in the company, which is being acquired as part of the sale. The Debtor testified there was $94,000 in cash in the company, that the company expected to receive $80,000 from the Plantation Federal loan (which is included in the $150,000 due on the loans), and the company expected receivables by closing in the amount of $95,000. Thus, the company will have cash of $269,000 on hand at the time of the closing. Based on the cash in the company at the time of closing, the actual consideration to be paid is $21,000.

21. The Debtor's witness testified that it was his "understanding" that McConnell was purchasing all the company trade payables. Even if McConnell abides by the terms of this "understanding," the consideration paid under this agreement is far below that stated by the Debtor in its motion. According to the balance sheet provided by the Debtor, and entered as Debtor's Exhibit A, the net projected deficiency between all the Debtors assets and all its liabilities (both pre and post-petition) would be $116,000. Thus, the buyer would also be responsible for the leases going forward of $127,000. Under this scenario, the total consideration to be paid is $243,000.

22. The fact that the actual proposed purchase price is far below that stated in the original motion to sell is new evidence which requires the court to allow other bidders to participate. This

evidence was only presented to the court at the hearing of the Motion to Sell, and therefore, could not have been presented at the hearing approving the bidding procedures.

23. The appearance of other bidders and potential bidders is additional evidence that appeared after the entry of the Order on bidding procedures, and that evidence goes to the sufficiency of the bid notice and procedures.

24. Attached as Exhibit A is the declaration of Larry Young setting forth the terms of his proposed bid. Mr. Young testified at the hearing that his is ready to make a deposit, and that his bid would be $700,000. He testified that he has 35 years experience in owning golf courses, and is a currently involved with the management of TPC Myrtle Beach. He testified that he would make similar offers of membership to the current members, and make improvements to the course similar to those offered by the McConnell. Most importantly, the Court should note that this is a cash bid for the course and its assets. The Debtor's current cash would be part of the bankruptcy estate. Thus, the Debtor would have $969,000 available to pay the debts of the company – the current cash on hand ($269,000) plus the net funds from the purchase ($700,000). Mr. Young's offer is vastly superior to the McConnell offer, and the presence of this offer justifies the extension of the bidding procedures.

25. Also attached as exhibit B is the declaration of Billy Degan. Mr. Degan represents Jack Davis, and submitted a declaration asking that the bidding remain open to allow his client to bid. Note that Mr. Davis did not make an offer because he understood from communication with Club members that the McConnell sale was a "done deal" and that the Club would not entertain additional offers. It was only after reading about the sale hearing in the papers that he learned that additional offers may be possible.

26. The Degan declaration demonstrates both the collusive nature of the original bidding process and the deficiencies in the original bidding procedures.

27. Other potential bidders continue to express interest in making bids. The declarations of Dung Lam, previously submitted in support of the objection to the Debtor's Motion to sell, and Doug Wall, exhibit C, demonstrate that opening the bidding procedure could bring even more offers to the table.

28. Combined, the four declarations from potential bidders demonstrate that the bidding notice was not adequate. The Court should also note that the advertisement in Golf Business Magazine was not even published prior to the sale hearing and that the Debtor did no advertisement whatsoever in immediate region of the course.

29. The Debtor will not be harmed by the extension of the bidding procedures. The Debtor testified that the company has actually earned a profit post-petition of approximately $40,000. The Debtor's cash flow summary (Debtor's Exhibit A at the hearing on the Motion to Sell) demonstrates that the Debtor's cash on hand has increased from $64,666 on filing to a project $106,841 at the end of March. That figure does not include post-petition financing of $80,000, which will be additional cash available to fund operations. Larry Young, an experienced golf course owner, testified that the months of March - May are among the most profitable in the year for golf course. Thus, going into its most profitable quarter, the Debtor has three times more cash on hand than it had at the beginning of this bankruptcy. The Debtor is not in danger of closing, and the Debtor's continued insistence on that it must close is further evidence of the collusive nature of the sale between McConnell and the Debtor.

30. The Order should also be amended to reduce or eliminate the Reimbursement Fee. Agreements to pay a break-up fees or expense reimbursement fees are incentives designed to encourage potential purchasers to bid for assets by compensating a stalking horse to attract more favorable offers. *In re Paintball, Inc.*, Dist. S.C. Bankruptcy Case: 03-8807 (2003); citing *In re S.N.A. Nut Company*, 186 B.R. 98, 101 (Bankr. N.D.Ill. 1995). Factors to be considered in evaluating the

approval of such fees are: (1) whether the underlying agreement is an arms-length transaction, (2) whether the principal secured creditors and creditors committees support the fee, (3) whether the fee is a reasonable percentage of the proposed purchase price, (4) whether the fee is so substantial that it provides a "chilling effect" on potential bidders; (5) the existence of available safeguard beneficial to the debtor's estate, (6) whether the fee creates substantial adverse impact upon unsecured creditors. *Id*. Citing *In re Hupp Industries, Inc.*, 140 B.R. 191 (Bankr. N.D. Ohio 1992).

31.    The fee in this case is unreasonable and is not a necessary expense of the estate. This fee was not necessary to induce McConnell to bid. The testimony of the Debtor indicated that McConnell has been trying to purchase the property for nearly a year, and was only prevented from doing so by the lawsuit filed by former members of the Club. Thus, the primary reason for such reimbursement fees is not present in this case.

32.    Moreover, the fee is not reasonable in light of the proposed purchase price. The proposed fee is 19 percent of the purchase price as stated by the Debtor. While break-up fees are not subject to easy application of a range of percentages, courts have cited that the industry standards for such fees are 3.3 percent. *In re Integrated Resources, Inc.*, 135 B.R. 746 (Bankr. S.D.N.Y. 1992). The court has refused to approve fees as low as 7.5 percent. See *In re Paintball, Inc.*, *supra*. This Court noted that a $200,000 expense reimbursement fee was uncustomarily high in a transaction involving in excess of $16 million. *In re Georgetown Steel*, S.C. Bankruptcy Case: 03-13156, Docket 658. A fee of nearly 20 percent the sale price would chill other offers and indicates that the sale notice is not reasonable.

33.    The fee is not an actual and necessary expense of the estate in this case which could be approved under 11 U.S.C. §503. In light of the Debtor's pre-petition contract with McConnell and the statements of the board of managers, the reimbursement fee appears calculated to discourage, rather than encourage, bidding on the project. The inclusion of this provision is further evidence that the

Debtor is trying to push through an insider deal that benefits current members/owners while excluding the former members claims. Therefore, inclusion of an unapproved fee on the notice of sale is an indication that the notice was not fair and reasonable.

WHEREFOR, the Committee respectfully requests that this Court (1) alter its Order Establishing bidding procedures to extend the period for bidding until March 29, 2010, or such other time as the Court deems necessary to allow bids to be placed, (2) alter its Order to remove the approval of the Reimbursement fee, and (3) continue the hearing on the motion to sell until the Court's next available hearing thereafter.

THE CULVER FIRM, P.C.

/s/ Robert E. Culver,
Robert E. Culver, Esq.
Fed. Id. No.: 7289
575 King Street, Ste. A
Charleston, SC 29403
Email: bob@culverlaw.net
Phone: 843-853-9816
Facsimile: 843-853-9838

Counsel for the Official Committee
of Unsecured Creditors for The Reserve Golf
Course of Pawleys Island, LLC

March 15, 2009

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>The Reserve Club of Pawleys Island, LLC.,<br><br>Debtor. | Case No. 09-09116-jw<br>Chapter 11<br><br>**CERTIFICATE OF SERVICE** |

I, Linda A. Emanuele, Paralegal to Robert E. Culver, of The Culver Firm, P.C., Counsel for the Unsecured Creditors Committee, in the above-captioned matter, do hereby certify that I have on 16th day of March, 2010, via United States Postal Service, prepaid with the proper postage affixed, mailed a copy of **MOTION BY THE UNSECURED CREDITORS COMMITTEE TO ALTER THIS COURT'S ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES** to the following:

J. Edward Norris, III, President
Plantation Federal Bank
11039 Ocean Highway
Pawleys Island, South Carolina 29585

Z. S. Lawhon
Post Office Box 9279
Hickory, North Carolina 28603

Randy E. Eckard
114Coleman Court
Pawleys Island, South Carolina 29585

Frank Stiglin
75 Glenegle Lane
Pawleys Island, South Carolina 29585-6750

Joseph R. Bilotta
973 Doral Drive
Pawleys Island, South Carolina 29585-6761

Joseph J. Seliga
16328 Cutters Court
Fort Myers, Florida 33908-3094

John L. Dyer
2360 Eisenhower Avenue
Watkinsville, Georgia 30677

John R. Hussey
107 Oakview Circle
Manning, South Carolina 29102

Carolyn D. Gardner
14 Historic Lane
Pawleys Island, South Carolina 29585

Conrad I. Kohler
205 Berwick Drive
Pawleys Island, South Carolina 29585

Alan L. England
77 St. Anne's Place
Pawleys Island, South Carolina 29585

Michael F. Sacco
Post Office Box 1230
Pawleys Island, South Carolina 29585-1230

Joseph F. Buzhardt, III
Office of the United States Trustee
1835 Assembly Street Suite 953
Columbia, South Carolina  29201

Suzanne Taylor Graham Grigg, Esq.
Nexsen Pruet, LLC
PO Drawer 2426
Columbia, South Carolina  29202

J. Ronald Jones, Jr., Esq.
126 Seven Farms Drive
Suite 200
Charleston, South Carolina  29492-7595

William McCarthy, Esq.
Daniel J. Reynolds, Jr., Esq.
McCarthy Law Firm, LLC
1715 Pickens St. (29201)
PO Box 11332
Columbia, SC 29211-1332

Reserve Golf Club of Pawleys Island, LLC
18 Reserve Drive
Pawleys Island, South Carolina 29585

The Reserve Golf Club Acquisition, LLC
400 Donald Ross Drive
Raleigh, North Carolina 27610
Attention of John McConnell

Wyrick Robbins Yates and Ponton LLP
4101 Lake Boone Trail, Suite 300
Raleigh, North Carolina 27607
Attention of Larry E. Robbins

/s/ Linda A. Emanuele
Paralegal to

Robert E. Culver, Esq.
Fed. Id. No.: 7289
The Culver Firm, P.C.
575 King Street, Ste. A
Charleston, SC 29403
Email: bob@culverlaw.net
Phone: 843-853-9816
Facsimile: 843-853-9838