UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: | Chapter 11 |
| The Reserve Golf Club of Pawleys Island, LLC, | **Case No 09-09116-jw** |
| Debtor. | |

### OBJECTION OF THE DEBTOR TO THE MOTION OF THE UNSECURED CREDITORS COMMITTEE TO ALTER THE COURT'S ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES

The Reserve Golf Club of Pawleys Island, LLC, as debtor and debtor-in-possession in this case (hereinafter, the "Debtor"), by its undersigned counsel, McCarthy Law Firm, LLC, submits this Objection (the "Objection") to the Motion of the Official Committee of Unsecured Creditors (the "Committee") for Entry of an Order Altering this Court's Previous Order Establishing Bidding and Other Procedures (the "Motion to Alter"), and respectfully represents as follows:

### BACKGROUND

1.     On December 4, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate its business as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

2.     Debtor is a member-owned entity that operates a private golf course in Georgetown County, South Carolina with approximately 31 employees and 480 members. The Debtor filed this bankruptcy proceeding in order to facilitate a Section 363 sale of its assets.

3. On or about January 6, 2010, more than a month after the Petition Date, the Office of the United States Trustee (the "US Trustee") filed its Statement that no creditor's committee had been formed in this matter.

4. On January 21, 2010, the Debtor filed a motion to sell (the "Sale Motion") substantially all of its assets to a McConnell Golf entity, subject to higher or otherwise better bids at an auction and a Motion for Order Establishing Bidding and Other Procedures in Connection with the Sale (the "Bidding Motion").

5. On January 28, 2009, after receiving late interest from unsecured dissident member creditors and almost two months after the filing of the petition in this matter, the United States Trustee appointed the Committee pursuant to Section 1102(a) of the Bankruptcy Code. The members are Plantation Federal Bank, Michael Sacco, Frank Stiglin and Conrad Kohler.

6. On January 29, 2010, the Debtor's Sale Motion, the Court's Order Setting a Hearing on the Sale Motion, the Bidding Motion, and the Court's Notice and Order Setting a Hearing on the Bidding Motion were served on all creditors and known interested parties in this matter. This service included the members of the Committee as well as twenty-four (24) parties identified by the Debtor as potential bidders.

7. On February 10, 2010, the Court held a hearing on Debtor's Bidding Motion. Present at the hearing was proposed counsel Bob Culver on behalf of the Committee. No objections were raised or filed by the Committee or its counsel at or prior to the hearing on the Bidding Motion.

8.      On February 18, 2010, the Court issued its Order Establishing Bidding and Other Procedures in Connection with the Sale of the Debtor's Assets and Granting Protections to the Proposed Buyers (the "Bid Procedures Order").  By the terms of this Bid Procedures Order, bidding was to close five (5) days prior to the March 10 sale hearing, on March 5th, 2010.

9.      Also on February 18, 2010, the Debtor filed an Addendum to the Sale Motion and a Notice of Auction Sale and Sale Hearing ("Notice of Auction and Sale").  The Addendum to the Sale Motion, the Notice of Auction and Sale, and the Bid Procedures Order were served on all creditors and known interested parties in this matter.  This service included the members of the Committee as well as twenty-seven (27) parties identified by the Debtor as potential bidders.

10.     Notice of the sale was published in the State newspaper beginning on Sunday, February 7th 2010 and again on Sunday, February 21st, 2010.  Notice was advertised on the State newspaper website for one week after each print advertisement.  Notice was also been published on the National Golf Course Owners' Association website since February 5th, 2010.

11.     On March 10 and 11, 2010, the Court held a hearing on Debtor's Motion to Sell Substantially All of its Assets (the "Sale Motion").

12.     On March 15, 2010, approximately forty-five (45) days after service of the Bidding Motion, proposed Bid Procedures Order, and Order Setting Hearing on the Bidding Motion, and approximately twenty-five (25) days after entry and service of the final, entered Bid Procedures Order, the Committee filed its Motion to Alter the Bid Procedures Order.

## THE RELIEF SOUGHT UNDER BANKRUPTCY RULE 9023 IS IMPROPER AND UNTIMELY

The Committee's Motion to Alter asserts that a party has 28 days to request that the Court alter or amend its findings pursuant to Fed. R. Civ. P. 59.  The Committee further asserts that the Court may alter or amend its own judgment within 28 days of the entry of the judgment, or may alter its judgment on motion of any party for reasons not stated in the motion.  Rule 59 is applicable to bankruptcy court judgments by virtue of Fed. R. Bankr. P. 9023.  However, Rule 9023 Fed.R.Bankr.Pro. specifies that Rule 59 applies except as provided in Rule 9023.  Rule 9023 specifies that a motion to alter or amend a judgment shall be filed **no later than 14 days after entry of a judgment**.  The Court issued the Bid Procedures Order on February 18, which was some twenty-five (25) days before the Committee filed its Motion to Alter.  Therefore, the Motion to Alter is untimely pursuant to Fed. R. Bankr. P. 9023 and should be summarily denied on that basis.

The Committee's Motion to Alter, which proposes significant changes in timing of bids and proposes a change to the protections previously afforded the Debtor's stalking horse bidder in this matter, is improper at this late date, post-Sale Hearing.  Though the Bidding Motion was initially requested *ex parte*, the Court had the foresight to allow parties an opportunity to object and to schedule and hold an active hearing on the Bidding Motion in this matter.  The Committee's Motion to Alter is especially egregious in regard to changing the terms of the Bid Procedures Order because Committee counsel appeared at the Bid Procedures Hearing without objection to the Bidding Motion.  In a comparable situation, a bankruptcy Court in New York denied a bid that was received four days after the deadline, failed to include the required deposit, and did not provide proof of the financial resources necessary to effectuate the purchase.  See

Oren v. Kass (in re Anita Terrace Owners, Inc.), Ch. 11 Case No. CV-04-4297 (E.D.N.Y. Sept. 23, 2005). In Oren v. Kass, the Court declined to set aside the Bid Procedures Order because the movant had not filed a timely appeal and the evidence surrounding the issues had been in the public record for some time. Id. In the instant case, the Committee's course of conduct with regard to the substantive provisions of the Bid Procedures Order is further evidence of the unrepresentative Committee's attempts to improperly block or delay the Sale before the Court to the detriment of the overwhelming majority of unsecured creditors. Such conduct should not be condoned. Bidding Procedures have long been implemented in this district in order to avoid this exact type of chaos, delay, and confusion in auction sales, and the Committee had every opportunity prior to the Sale Hearing, the expiration of the bidding deadline, the expiration of the time to reconsider the Bid Procedures Order, and at or prior to the hearing on the Bidding Motion to raise its objections or to suggest different procedures.

## COMMITTEE ASSERTIONS OF IMPROPER NOTICE OF SALE & BIDDING PROCEDURES ARE WITHOUT MERIT

The Committee appears to assert that the failure of other parties to submit timely bids was due to surprise, inadvertence or excusable neglect. The Committee argues that notice of the opportunity to bid was insufficient and that this alleged inadequate notice was such surprise, inadvertence or excusable neglect.

The Committee's assertion of insufficient notice is not supported by the evidence. The State newspaper is a statewide newspaper, not a Columbia newspaper as the Committee has suggested. Per circulation statistics found at http://www.thestate.com, Sunday circulation is 125,149. Based on the overall posture and behavior of the Committee, had the Debtor advertised

in The Sun News, a local Myrtle Beach area newspaper, the most widely circulated of which reaches 59,145 on Sunday, the Committee would likely have objected that the paper selected did not have a wide enough readership. Similarly, the Committee asserts that the advertisement in Golf Business Magazine was not published until after the date of the sale hearing. It is true that the Debtor was unable to meet the deadline for publication in the Magazine's February issue as noted at the hearing on the Sale Motion, but the Debtor's advertisement therein has now been published in the print magazine. This argument by the Committee also ignores the fact that the online advertisement of the Debtor's sale had been running on the Golf Business Magazine's website since February 5, 2010, for a full month prior to the deadline for submitting bids.

Despite the assertions that notice of the sale and bidding procedures were inadequate, the clear evidence before the Court shows that these assertions are without merit. The Committee has failed to carry its high burden under Bankruptcy Rule 9024 or Rule 60 Fed.R.Civ.P. for surprise, inadvertence, or excusable neglect.

**THE COMMITTEE HAS FAILED TO SHOW NEW EVIDENCE SUFFICIENT TO CARRY ITS BURDEN UNDER RULE 9024**

The Committee also relies on Bankruptcy Rule 9024 alleging that the appearance of other bidders and potential bidders constitutes new evidence justifying an extension of the bidding procedures. However, there is nothing in the record to support such assertions.

Due to the findings in the Order and Notice of Emergency Hearing on the Motion to Alter, issued by the Court on March 17, 2010 (the "Notice of Emergency Hearing"), the previously submitted declarations of Mr. Dung Lam and Hilda Allen that were re-submitted by the Committee as a part of the Motion to Alter remain inadmissible pursuant to Fed. R. Evid.

801(c). In support of the Motion to Alter, the Committee has offered three additional affidavits, the affidavits of Larry Young, Doug Wall, and Billy Degan, which affidavits the Debtor asserts are also inadmissible as hearsay. However, out of an abundance of caution, the Debtor submits the following with regard to such affidavits:

The Declaration of Larry Young

The Committee's assertion that Larry Young is willing and able to place a bid for $700,000 is questionable at best. Larry Young is a declarant who also appeared at the Sale hearing as a witness for the Committee. The Debtor served upon Mr. Young, the Bidding Motion and proposed Bid Procedures Order on or about January 29, 2010 as well as the final, entered Bid Procedures Order by UPS overnight mail on February 18, 2010. Mr. Young's testimony at the Sale Hearing evidenced his having received these documents well in advance of the deadline to submit bids in this matter. Yet, Mr. Young elected to not enter a bid by the March 5, 2010 bidding deadline. In his testimony, Mr. Young seemed to indicate that he failed to submit a bid because he did not understand the Order. In addition to being a person identified by the Debtor as a potentially interested bidder from the outset of this matter, Mr. Young was also identified by the committee as a potential bidder prior to service of any of the sale related pleadings in this matter. The uncontroverted testimony at the Sale Hearing in this matter was that Mr. Young has been aware of the Debtor's intention to sell its assets for approximately a year, and has received all the notices and sale related pleadings in this matter. To date, Mr. Young has not filed a Qualified Competing Bid, as that term is defined in the Bid Procedures

Order. Even if Mr. Young had submitted a bid he would need to show that he has the ability to purchase the Debtor's assets.[1]

It should also be noted that there has not yet been a determination that the possible, potential bid of Mr. Young is "substantially similar in financial respects" to the McConnell bid as required by the Bid Procedures Order in this matter, and the Debtor asserts that the possible, potential bid described by Mr. Young at the hearing and in his affidavit is not. Due to the approved Reimbursement Fee, Mr. Young's alleged potential offer would increase the cash funds available to creditors of the estate by approximately $77,295 at most. The offer contemplated by Mr. Young, absent a subsequent vote of the Club members, could not match the McConnell offer regarding the extinguishment of initiation fees by the Club's members. Upon information and belief, the Club's members have a general disinclination towards belonging to a semi-public golf club owned and operated by Mr. Young. Therefore, if the possible, potential bid contemplated by Mr. Young were actually to be submitted and considered by the Court, the Debtor asserts that the majority of Club members would resign en masse and elect to submit a claim rather than become members of a Young owned club. The potential pool of contingent initiation fee refund claims would increase exponentially and the claims would more than subsume any additional cash funds to the estate.

Furthermore, Mr. Young's alleged potential offer does not provide equivalent value to the contingent initiation fee refund claimants who elect to become members of the new club rather than participate in a distribution of available funds. Mr. Young's promise to provide future capital improvements fails to commit to a dollar figure of such improvements, and fails to

---

[1] Based on the uncontroverted testimony at the Sale Hearing, it is highly questionable at best as to whether Mr. Young has the financial ability to consummate any bid he might submit.

include essential elements of capital improvements desired to be made to the course and its facilities. Unlike the McConnell offer before the Court, Mr. Young's alleged potential offer only suggests limited remedial measures to improve portions of the course, thereby providing significantly less value to those that elect to become members of the new club.

<u>The Declarations of Doug Wall and Billy Degan</u>

The declaration of Mr. Wall claims that Mr. Wall received knowledge of the sale on March 3rd, yet did not have a chance to submit a bid prior to the March 5 deadline. Mr. Wall's declaration states that he would like the "***opportunity*** to submit a bid", and does not indicate a willingness to submit any particular bid. The Debtor notes for the Court that it is now some approximately seventeen (17) days since the bid deadline, that the Debtor has continued to be cooperative with alleged potential bidders, and an otherwise Qualified Competing Bid has not been received from Mr. Wall to date. Similarly, the declaration of Mr. Degan states that he is a real estate agent representing an individual that "is interested in participating in bid procedures." Again, there has been no statement of intent to bid, nor has Mr. Degan or his client submitted an otherwise Qualified Competing Bid.

The appearance of possible, potential bidders at this late date does not constitute new evidence justifying an extension of the bidding procedures. There are no other qualified competing bids or bidders, as the Committee asserts, merely alleged potential bidders. Even if not considered to be hearsay by the Court, none of the declarations filed by the Committee contain or allege facts sufficient to support the Committee's high burden of proof or a basis for relief for on grounds of newly discovered evidence under Bankruptcy Rule 9024 or Rule 60, F.R.Civ.Pro.

**THE COMMITTEE'S ASSERTIONS OF MISREPRESENTATION ARE UNFOUNDED**

The Committee also asserts that the Court should amend the Order Establishing Bidding Procedures because the Debtor misrepresented the value of the transaction in its Sale Motion. The Debtor did not misrepresent the value of the transaction, and has consistently provided any interested parties, including the Committee with any and all financial information requested. The components of the purchase price were articulated in the Sale Motion and Addendum to the Sale Motion, and were supported by the records and testimony of the Debtor. In his questioning of Mr. Catanzaro, counsel for the Committee attempted to draw out speculation regarding the amount of cash and liabilities on record at closing. In its motion, the Committee asserts that the amounts of each component of the purchase price at time of closing are the amounts suggested by the questions of its counsel at a date in the past, not by the answers of the witness as to the amounts expected at a Sale closing. There is no evidence to support the Committee's assertions regarding misrepresentations of the value of the transaction.

**THE POTENTIAL HARM TO THE ESTATE OUTWEIGHS ANY POTENTIAL BENEFIT OF REOPENING BIDDING**

The Committee also asserts that the Court should amend the Order Establishing Bidding Procedures because the Debtor will not be harmed by the extension. If bidding is reopened, the Debtor will be harmed by the extension of time. The Debtor's cash projections and its ability to operate beyond March 31 are dependent upon a successful sale of the assets. Based on evidence offered at the Sale Hearing in this matter, in the absence of a successful sale to a reputable private operator, members will resign and all meaningful cash inflows will soon cease. If the sale is not approved and time to submit a bid is extended and/or the protections afforded the

current bidder are altered, the current actual bidder may withdraw and the Debtor could be left with no actual bidders; the terms of the signed APA permit the purchaser to withdraw if the transaction cannot be completed by March 31, 2010.  A withdrawal will also require the estate to return $66,250 set aside for creditors back to the contributors.  There are no Qualified Competing Bids, and if the purchaser withdraws, the assets of the Debtor are at risk of losing their going concern premium and being sold for substantially less than McConnell is offering.  This sequence of events would not only harm the Debtor, but its creditors as well.

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that the Court (a) deny the Motion; (b) sustain the Bid Procedures Order; and (c) grant such other and further relief as may be just and proper.

Dated:  March 22, 2010

Respectfully submitted,

**McCARTHY LAW FIRM, LLC**

/s/Daniel J. Reynolds, Jr.
G. William McCarthy, Jr., Dist. I.D.#2762
Daniel J. Reynolds, Jr., Dist. I.D.#9232
Sean P. Markham, Dist. I.D. #10145
Attorneys for the Debtor
1715 Pickens Street
P. O. Box 11332
Columbia, SC   29211-1332
(803) 771-8836
(803) 779-0267 (fax)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| The Reserve Golf Club of Pawleys | ) | |
| Island LLC | ) | Case No. 09-09116-jw |
| | ) | |
|                 Debtor. | ) | |

**CERTIFICATE OF SERVICE**

I, Daniel J. Reynolds, Jr., Attorney for the Debtor, do hereby certify, under penalty of perjury, that I have served the attached **OBJECTION OF THE DEBTOR TO THE MOTION OF THE UNSECURED CREDITORS COMMITTEE TO ALTER THE COURT'S ORDER ESTABLISHING BIDDING AND OTHER PROCEDURES** upon the creditors and parties in interest, as shown on the list below, by electronic mail service, on the 22nd day of March, 2010.

**Parties served:**

Robert E. Culver, Esq.
Bob@Culverlaw.net

J. Ronald Jones, Jr., Esq.
Clawson & Staubes, LLC
rjones@clawsonandstaubes.com

Joseph F. Buzhardt
Assistant U. S. Trustee
Joseph.F.Buzhardt@usdoj.gov

                                  McCARTHY LAW FIRM, LLC

                                  /s/Daniel J. Reynolds, Jr.
                                  Daniel J. Reynolds, Jr., Dist ID #9232
March 2, 2010                    1715 Pickens Street
                                  Columbia, South Carolina Post Office Box 11332
                                  Columbia, South Carolina 29211-1332
                                  (803)771-8836